UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOUIS BARRY RUTLDGE,<br><br>        *Plaintiff*<br><br>     -*against*-<br><br>TRANSITCENTER, INC. and LARRY FILLER,<br><br>        *Defendants* | Index No. 07 CIV 11267 (JGK)<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Louis Barry Rutledge, by and through his attorney, Scott J. Steiner P.C., complains of defendants as follows:

### JURISDICTION AND VENUE

1. This action seeks damages against defendants, with respect to plaintiff's former employment, for racial and skin color discrimination under Title VII of the Civil Rights act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"); the New York State Human Rights Law, Executive Law § 290, et seq.; and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, et seq.

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 2000e, et seq.

3. All conditions precedent to suit under Title VII have occurred or been complied with, specifically: (a) a timely charge of employment discrimination was filed with the Equal Employment Opportunity Commission; (b) a Notice of Right to Sue, a copy of

1

which is attached hereto as Exhibit "A", was received on September 19, 2007, and (c) this complaint has been filed within ninety (90) days of receipt of the Notice of Right to Sue.

4. Pursuant to 28 U.S.C §1367, this Court has supplemental jurisdiction over state and local law claims arising from the same nucleus of operative facts and which are part of the same case or controversy as the federal claims.

5. Venue is appropriate in this Court under 28 U.S.C. § 1391 (b) and (c), in that plaintiff was, at all relevant times, a resident of this judicial district, the defendants, at all relevant times, did business in this judicial district, and a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.

## PARTIES

6. Plaintiff, Louis Barry Rutledge, is a black male of African-American descent who was born on August 23, 1959 and presently resides in, White Plains, New York 10605. Plaintiff was hired by TransitCenter, Inc. ("TransitCenter") on October 20, 2003 in the position of "Sales Supervisor." Plaintiff served as Acting Vice President of Sales from October, 2005 until his departure from TransitCenter on about February 21, 2006.

7. Defendant TransitCenter is an "employer" within the meaning of Title VII and other applicable anti-discrimination laws, and has a place of business at 1065 Avenue of the Americas, 16th Floor, New York, New York 10018. TransitCenter is in the business of selling transportation benefit programs that allow employers to pay employees' commuting costs in pre-tax dollars.

8. At all times relevant herein, defendant Larry Filler, a white male, was the President and CEO of TransitCenter, and an agent and representative of TransitCenter. He is liable as an aider and abettor under the New York State Human Rights Law and the New

York City Human Rights Law.

## FACTS

### PLAINTIFF'S EMPLOYMENT HISTORY

9. Plaintiff's employment by TransitCenter began on October 20, 2003 as Sales Supervisor. Plaintiff reported to Diana Marran, the Vice President of Sales.

10. Plaintiff worked as the "Outside" Sales Supervisor, meaning that he was responsible for supervising the "Outside" sales force which sells the more profitable automated products of TransitCenter. The "Outside" sales force did not handle cold calls, but visited potential customers at their offices.

11. As Sales Supervisor, plaintiff was given a very small sales territory and devoted a good deal of his time to management of the sales force. Plaintiff regularly assisted with sales meetings, visited accounts with his sales representatives, and otherwise supervised his sales force. Plaintiff also responded to Requests for Proposals and attended executive meetings.

12. Within six months of plaintiff's commencement of employment with TransitCenter, plaintiff and Diana Marran agreed that plaintiff's sales responsibilities would be replaced with managerial duties until plaintiff's position was completely managerial and sales responsibilities were no longer part of his job description.

13. On about October 17, 2004, Diana Marran left TransitCenter. Larry Filler and Rosa Dachille (Vice President of Human Resources) met with plaintiff and asked him to assume the duties of Vice President of Sales as "Acting" Vice President of Sales. Plaintiff did so, assuming all the duties and responsibilities of the Vice President of Sales. Plaintiff's title and salary, however, remained that of Sales Supervisor and plaintiff was never invited to

3

move into the Vice President of Sale's office.

14. Despite exemplary performance and repeated requests, plaintiff was repeatedly denied the promotion to the position of Vice President of Sales and Marketing.

15. On about January 23, 2006, TransitCenter hired Paula Murray, a white female less qualified than plaintiff, as the Vice President of Sales.

16. On February 14, 2006, Paula Murray met with plaintiff to outline plaintiff's position and job responsibilities as "Sales Manager" under her.

17. Murray provided Plaintiff with a new written job description would have required him to perform, almost exclusively, sales over a large territory, without any appreciable management function.

18. Plaintiff's new job description not only constituted a demotion from his position as Acting Vice President of Sales and Marketing, it also constituted a substantial demotion from his former duties as Sales Supervisor under Diane Marran.

19. In purported response to plaintiff's concerns, on or about February 17, 2006, TransitCenter changed the title of plaintiff's position from "Sales Manager" to "Director of Sales Development." This change, however, was merely cosmetic as the job description was otherwise identical to that of Sales Manager provided to him by Paula Murray.

20. On or about February 21, 2006, plaintiff informed TransitCenter that he would not be able to accept the demotion to Director of Sales Development. In response, Paula Murray requested that plaintiff submit a letter of resignation by the end of the day. Plaintiff complied with this request.

## PLAINTIFF'S EMPLOYMENT PERFORMANCE

21. At all relevant times, plaintiff's performance equaled or exceeded expectations.

22. Plaintiff excelled as Acting Vice President of Sales. In his performance evaluation of April, 2005, a copy of which is annexed hereto as Exhibit B, plaintiff met or exceed expectations in every category.

23. Plaintiff met or exceeded every sales goal set for him dramatically increased sales, especially of the automated "P1" and "P2" programs that did not rely on a paper voucher program and the growth of which was central to TransitCenter's business plan.

24. On January 30, 2005, defendant Larry Filler reported to the TransitCenter Board of Directors that sales were on target to meet forecasts and that growth of the New York City Premium Transit Check and non-Transitcheck programs (for which plaintiff was responsible) exceeded forecasts.

## TRANSITCENTER'S DISCRIMINATORY CONDUCT

25. In October, 2004, plaintiff asked TransitCenter to consider him for the permanent position of Vice President of Sales. In light of his superior performance, plaintiff had every reason to be confident that he would receive the position.

26. Larry Filler and Rosa Dachile agreed that TransitCenter would consider plaintiff for the position of Vice President of Sales, however, they told plaintiff that any such decision would be subject to a three-month evaluation period. The evaluation period ended in January, 2005, but TransitCenter did not promote plaintiff to Vice President of Sales, nor did TransitCenter indicate that he would not get the position. Seven (7) months after he had

5

assumed the role of Acting Vice-President of Sales, on or about May 16, 2005, plaintiff was informed that he was denied the promotion.

27.   Plaintiff continued to successfully carry out his duties as Acting Vice President of Sales for an additional eight (8) months, until January 23, 2006. During this time, plaintiff repeatedly requested that he be granted the permanent position of Vice President of Sales.

28.   On July 21, 2005 and January 6, 2006, TransitCenter reiterated that plaintiff would not be promoted to the position of Vice President of Sales and Marketing.

29.   Upon information and belief, three (3) white TransitCenter employees, Rosa Dachille, Barbara Klein, and Susan O'Sullivan, were promoted to the level of Vice President during plaintiff's employment at TransitCenter.

30.   None of these promoted employees had qualifications superior to those of plaintiff.

31.   Upon information and belief, no outside candidates were interviewed in connection with the promotion of either Rosa Dachille, Barbara Klein, or Susan O'Sullivan. Additionally, both Barbara Klein and Susan O'Sullivan had been employed by TransitCenter for less than one year at the time of their promotions.

32.   When Susan O'Sullivan's superior left TransitCenter, Ms. O'Sullivan was immediately promoted to the position of Vice President of Marketing. Unlike plaintiff, Susan O'Sullivan was not required to undergo any evaluative period prior to her promotion. Furthermore, even before her official promotion, she was introduced at a meeting of executives as the "next" Vice President of Marketing by Larry Filler. Additionally, she was referred to as the Vice President of Marketing in TransitCenter literature.

33. In contrast, plaintiff was denied the promotion despite his exemplary performance as Acting Vice President of Sales. He continued to perform all of the functions of Vice President of Sales without the salary, recognition, or respect that the position affords.

34. After Ms. O'Sullivan's promotion, plaintiff spoke to Rosa Dachille, head of Human Resources, and stated to her "I guess you have different strokes for different folks" and "TransitCenter does not do blacks right." Ms. Dachille did not respond to these comments and instead simply stared at plaintiff. After about 20 seconds of unresponsiveness, plaintiff left the room.

35. Despite plaintiff's complaint to the head of Human Resources, TransitCenter failed to investigate plaintiff's allegations of racial discrimination.

36. Upon information and belief, no other TransitCenter employee was asked to assume managerial duties and responsibilities but was denied the title and salary appropriate to the position.

37. Plaintiff was, at all relevant times herein, the only African-American in upper management at TransitCenter.

38. Upon information and belief, currently, there are no African-Americans in upper management at TransitCenter.

39. TransitCenter's failure to promote plaintiff to Vice President of Sales and Marketing is contrary to TransitCenter's policy of promoting from within the company.

40. On June 27, 2007, the Equal Employment Opportunity Commission determined that TransitCenter, Inc. engaged in employment discrimination against Plaintiff in violation of Title VII, with respect to disparate treatment based upon his race and color.

41.    The above actions by defendants constitute unlawful discrimination on the basis of race and color in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.; the New York State Human Rights Law, Executive Law § 290, et seq.; and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, et seq.

### AS AND FOR A FIRST CAUSE OF ACTION
### (RACE DISCRIMINATION – TITLE VII)

42.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 41, as if set forth herein at length.

43.    The acts of the defendants constituted unlawful discrimination on the basis of race and color, in violation of Title VII.

44.    As a direct and proximate result of defendants' actions, plaintiff has suffered harm and is entitled to damages and relief under Title VII.

### AS AND FOR A SECOND CAUSE OF ACTION
### (RACE DISCRIMINATION – STATE HRL)

45.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 44, as if set forth herein at length.

46.    The acts of the defendants constituted unlawful discrimination on the basis of race and color, in violation of the New York State Human Rights Law ("State HRL").

47.    As a direct and proximate result of defendants' actions, Plaintiff has suffered harm and is entitled to damages and relief under the State HRL.

### AS AND FOR A THIRD CAUSE OF ACTION
### (RACE DISCRIMINATION – CITY HRL)

48.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 47, as if set forth herein at length.

49. The acts of the defendants constituted unlawful discrimination on the basis of race and color, in violation of the New York City Human Rights Law ("City HRL").

50. As a direct and proximate result of defendants' actions, Plaintiff has suffered harm and is entitled to damages and relief under the City HRL.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully prays that this Court:

1. Assume jurisdiction of this action;

2. Issue a permanent injunction enjoining defendants from further violations of the aforementioned laws;

3. Issue a declaratory injunction that the acts of defendants complained of were in violation of the aforementioned laws;

4. Order defendants to make Plaintiff whole for all earnings and other benefits he would have received but for defendants' violations of law, including but not limited to: wages (front pay and back pay), bonuses, pension, and other lost benefits, with prejudgment interest thereon;

5. Order defendants to pay Plaintiff compensatory and punitive damages for injuries, including emotional distress, suffered as a result of defendants' violation of the aforementioned laws;

6. Award Plaintiff the costs and disbursements of this action together with reasonable attorney's fees; and

7. Award Plaintiff such further and additional relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

Dated:     December 14, 2007
           White Plains, New York

                              Respectfully submitted,

                              SCOTT STEINER, P.C.


                         By:
                              _____
                              Scott J. Steiner (SS-0484)
                              Attorney for Plaintiff
                              2 William Street, Suite 302
                              White Plains, NY 10005
                              (914) 328-4734

10

EEOC Form 161-A (10/96)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE
*(CONCILIATION FAILURE)*

| | |
|---|---|
| To: Louis Barry Rutledge<br>12 Old Mamaroneck Road - Apt. 4D<br>White Plains, N.Y. 10605<br><br>Scott J. Steiner, Esq.<br>2 William Street, Suite 302<br>White Plains, N.Y. 10601 | From: Equal Employment Opportunity Commission<br>New York District Office<br>33 Whitehall Street, 5th Floor<br>New York, New York 10004-2112 |

[ ]   *On behalf of person(s) aggrieved whose identity is*
       **CONFIDENTIAL (29 CFR § 1601.7(a))**

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2006-00996 | Esther Gutierrez | (212) 336-3756 |

This Notice concludes the EEOC's processing of the above-numbered charge. The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you. In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case. This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** from your receipt of this Notice; otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_____          9/19/2007
Spencer H. Lewis, Jr., District Director        *(Date Mailed)*

Enclosure(s)

cc:  Respondent(s): TransitCenter, Inc.          Samantha E. Beltre, Esq.
     1065 Avenue of the Americas                  Fulbright & Jaworski L.L.P.
     New York, N.Y. 10018                         666 Fifth Avenue, 31st Floor
                                                  New York, N.Y. 10103-3198



# TransitCenter, Inc.

# PERFORMANCE APPRAISAL

(FOR MANAGERS AND SUPERVISORS ONLY)

**EMPLOYEE NAME:** Barry Rutledge

**JOB TITLE:** Account Executive Supervisor

**REVIEWED BY:** Larry Filler

**DEPARTMENT:** Sales

**DATE:** April 4, 2005

# PERFORMANCE LEVELS

**Unsatisfactory**
This would reflect performance that is unacceptable. Deficiencies noted at this level may or may not be correctable, but are, in any event, so severe that they raise serious and meaningful doubt regarding the employee's suitability for retention of the assigned responsibility relating to the rated element.

**Marginal, Needs Improvement**
Indicates that specific, correctable deficiencies have been noted. Receipt of an evaluation at this level should be viewed as positive evidence of a problem which, if not resolved prior to the employee's next review, will result in an unsatisfactory appraisal on that element.

**Good/Expected**
This assessment would characterize the performance of an employee who consistently meets the acceptable standards of the Company in a particular job element. It reflects what should prudently be perceived as the "national" average of performance displayed by similarly responsible personnel throughout American industry.

**Above Average**
Employees assessed at this level will regularly go beyond the norm of good, competent performance to display the extra effort and special skill needed to enhance the Company's continuing success. Performance at this level indicated that the employee is "on target" in terms of meeting the uniquely demanding requirements of TransitCenter, Inc.

**Excellent**
Evaluation as an "Excellent" performer will indicate that the employee combines an extraordinary degree of work effort with an advanced level of mature skills and abilities that <u>clearly</u> represent a significant improvement over historical norms within TransitCenter, Inc.

## I.   KEY ELEMENTS

**JOB SPECIFIC:** This section pertains to the specific, on-going functional duties and responsibilities for this individual. This does not include skills, or goals/objectives. Please complete at least four major functional duties and responsibilities. *Example: Establishing and maintaining business relationships.*

| Element 1: | Performance Level: |
|---|---|
| Manage the executive sales team | Above Average |

Comments: Barry is providing leadership and oversight to the sales excutives to ensure they are properly supported and are focused on the Corporation's sales objectives

| Element 2: | Performance Level: |
|---|---|
| Generate new enrollments from major employers | Good/Expected |

Comments: Barry responds to RFPs, makes sales calls and assists the sales executives in identifying and soliciting new business

| Element 3: | Performance Level: |
|---|---|
| Provides sales reports and sales analysis to the Executive Team | Good/Expected |

Comments: Since he became responsible for the conduct of the sales department, Barry has developed improved sales reports to document sales activities.

| Element 4: | Performance Level: |
|---|---|
| Establish an account management capability to monitor existing Accounts in order to prevent account losses | Above Average |

Comments: Barry has been able to establish an account management capability that has slowed down the loss of accounts to competitors

| Element 5: | Performance Level: |
|---|---|
|  |  |

Comments:

## II. SKILLS, ABILITIES AND CHARACTERISTICS

Identify and evaluate those skills and abilities that are relevant to the accomplishment of the employee's job responsibilities. For areas not pertaining to this employee, please specify N/A.

## TERM DEFINITIONS

**Technical Expertise** – Demonstrated knowledge and understanding of current principles, theories, and terminology specific to the job or profession.

**Quality of Work** – Accuracy and reliability of work done.

**Work Effort** – The degree of effort applied productively over time.

**Interpersonal Skills** – The ability to relate to and interact with others in a positive way that results in cooperation, mutual respect and common benefit. This includes subordinates, peers and superiors.

**Attendance** – Number of times the employee was absent, taking into consideration arriving late, leaving early, extended lunches.

**Communications** – The ability to accurately and effectively transmit and receive information that is necessary to the accomplishment of position responsibilities.

**Planning/Organizing** – The ability to manage time with proper emphasis on the important problems and to coordinate the activities and resources involved to maximize efficiency.

**Initiative/Proactive** – Self-motivation or energy applied to needed activities without awaiting a directive.

**Implementation** – The ability to carry out the functions and requirements needed to achieve an identifiable responsibility.

**Flexibility** – The ability to change approaches or methods based upon unique circumstances. This would include working irregular hours and overtime.

**Reasoning /Analytical** – The ability to separate a situation or problem into its components parts, identify all relevant factors and develop sound conclusions.

**Decisiveness** – The ability and willingness to make timely and prudent decisions based upon available information. Also consider quality of decisions.

**Responsibility** – Acceptance of accountability for one's actions. The conscientious fulfillment of one's obligations. Demonstrated reliability, trustworthiness and professionalism.
**Cost Sensitivity** – The ability to use the most cost effective means of reaching an objective. The ability to be cost-conscious.
**Leading/Motivating** – The ability to influence the activity of others in a desired direction toward obtaining the Company strategy, often by setting an example and establishing credibility.
**Coaching/Developing** – The ability to recognize performance strengths and limitations of subordinates, and to help them achieve their maximum potential.
**Delegating** – The ability to allocate work appropriately among subordinates to optimize efficiency of the manager, the group and each individual.
**Expense Control** – The ability to understand and manage the impact of expenses on the Company as a whole.
**Creativity** – Capability to identify and deploy unique and innovative solutions to business challenges and problems.

|                       | Unsatisfactory | Needs Improvement | Good/ Expected | Above Average | Excellent | N/A |
|---|---|---|---|---|---|---|
| Technical Expertise   |   |   | X |   |   |   |
| Quality of Work       |   |   | X |   |   |   |
| Work effort           |   |   | X |   |   |   |
| Interpersonal Skills  |   |   |   | X |   |   |
| Attendance            |   |   | X |   |   |   |
| Communications        |   |   | X |   |   |   |
| Planning/Organizing   |   |   | X |   |   |   |
| Initiative/proactive  |   |   |   | X |   |   |
| Implementation        |   |   |   | X |   |   |
| Flexibility           |   |   |   | X |   |   |
| Reasoning/Analytical  |   |   |   | X |   |   |
| Decisiveness          |   |   |   | X |   |   |
| Responsibility        |   |   |   | X |   |   |
| Cost Sensitivity      |   |   | X |   |   |   |
| Leading/Motivating    |   |   | X |   |   |   |
| Coaching/Developing   |   |   |   | X |   |   |
| Delegating            |   |   | X |   |   |   |
| Expense Control       |   |   | X |   |   |   |
| Creativity            |   |   | X |   |   |   |

## III. PERFORMANCE AGAINST STATED OBJECTIVES

Briefly describe previously agreed upon objectives in the left hand column. These objectives may have been agreed upon during the last written appraisal period or may have been developed verbally or written throughout the year. In the right hand column, describe the actual outcome of status of the assignment as specifically as possible. The section for Future Objectives should be used to list mutually agreed upon objective for the next appraisal period.

| OBJECTIVE | INDICATE PLANNED OR UNPLANNED | RESULTS ACHIEVED |
|---|---|---|
| 1. Provide working supervision for account | Planned | 1. Barry has improved the |

| | | |
|---|---|---|
| executives | | management of the account executives and assists them in improving their skills |
| 2. Enroll new accounts into the Premium TransitChek programs | Planned | 2. Barry has enrolled new companies into the Premium programs |
| 3. Provide support for the Vice President, Sales in managing sales staff and meeting sales goals | Planned | 3. Barry has provided good support to the VP, Sales. |
| 4. Assist with trade show exhibitions | Planned | 4. Barry has provided good support for trade shows. |
| 5. | | 5. |
| 6. | | 6. |

| FUTURE OBJECTIVES |
|---|
| 1. Assist account executives in upgrading major TransitChek accounts to a Premium TransitChek Program |
| 2. Provide management of account executives to help them achieve sales goals |
| 3. Provide monthly sales reports to monitor sales activities |
| 4. Participate in three to four major trade shows to increase the visibility of Premium TransitChek |
| 5. Work with Marketing to develop appropriate sales tools |
| 6. Support the establishment of a national sales program. |

## IV.   PROFESSIONAL ASESSMENT PLAN

**Major Strengths** – List those qualities that make this individual particularly valuable and which could lead to additional responsibility if such abilities are properly maintained, amplified and employed.

Barry works well with the sales personnel and provides them good support and assistance. He is sensitive to the training needs of the account executives and strives to strengthen their skills. He works well with customers and is able to deal with their problems. He is committed to the success of the sales program and strives to make it successful.

**Developmental Focus** – List those areas requiring attention, training or general improvement. The appraiser should offer constructive criticism and suggest a developmental plan that may include training which could aid this individual's attainment of any short or long term goals set forth by the employee and/or manager. This section must be completed for unsatisfactory or needs improvement performers.

Barry is required to report on sales using various reporting formats and analysis. He could benefit from training in analyzing and reporting on data. He is also responsible for reviewing and preparing written communications. He could benefit from a course in written communications.

**Training Focus** – List all pertinent training you'd like to see arranged to either improve the productivity of this employee or aid this employee to moving to the next level. Provide justification for each training indicating how it may effect the employee.

| SUGGESTED TRAINING | PROPOSED EFFECT |
|---|---|
| Data analysis and reporting | To improve his ability to provide effective sales reports |
| Writing Skills | To improve his written communication |
|  |  |

**V.    SUMMARY EVALUATION**

**Appraiser's Overall Rating**

Unsatisfactory*    Needs Improvement*    Good/Expected    X Above Average    Excellent

SUPPORTIVE COMMENTS ARE REQUIRED

---
**Appraiser's Signature**                                    **Date**


*[signature]*                                                 4-13-05
---
**Employee Signature**                                       **Date**


\* Note: An Unsatisfactory or Needs Improvement rating must be accompanied by a development focus plan.

**JUDGE KOELTL**

JS-44
REV. 12/2005

CIVIL COVER SHEET  **07 CIV 11267**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974 is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

1:2007 CV 11267 (JGK)(RLE)

**PLAINTIFFS**
LOUIS BARRY RUTLEDGE

**DEFENDANTS**
TRANSITCENTER, INC.
LARRY FILLER

**ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
Scott J. Steiner, P.C.
2 William Street, Suite 302, White Plains, NY 10601
914-328-4734

**ATTORNEYS (IF KNOWN)**
Scott J. Steiner

**CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)

Title VII of the Civil Rights act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"); the New York State Human Rights Law, Executive Law § 290, et seq.; and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, et seq.

Has this or a similar case been previously filed in SDNY at any time? No [x]  Yes? [ ]  Judge Previously Assigned

If yes, was this case  Vol.[ ]  Invol.[ ]  Dismissed. No[ ]  Yes [ ]  If yes, give date _____ & Case No. _____

(PLACE AN [x] IN ONE BOX ONLY)    NATURE OF SUIT

**ACTIONS UNDER STATUTES**

**TORTS**

**CONTRACT**
[ ] 110 INSURANCE
[ ] 120 MARINE
[ ] 130 MILLER ACT
[ ] 140 NEGOTIABLE INSTRUMENT
[ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
[ ] 151 MEDICARE ACT
[ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS)
[ ] 153 RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS
[ ] 160 STOCKHOLDERS SUITS
[ ] 190 OTHER CONTRACT
[ ] 195 CONTRACT PRODUCT LIABILITY
[ ] 196 FRANCHISE

**PERSONAL INJURY**
[ ] 310 AIRPLANE
[ ] 315 AIRPLANE PRODUCT LIABILITY
[ ] 320 ASSAULT, LIBEL & SLANDER
[ ] 330 FEDERAL EMPLOYERS' LIABILITY
[ ] 340 MARINE
[ ] 345 MARINE PRODUCT LIABILITY
[ ] 350 MOTOR VEHICLE
[ ] 355 MOTOR VEHICLE PRODUCT LIABILITY
[ ] 360 OTHER PERSONAL INJURY

**PERSONAL INJURY**
[ ] 362 PERSONAL INJURY - MED MALPRACTICE
[ ] 365 PERSONAL INJURY PRODUCT LIABILITY
[ ] 368 ASBESTOS PERSONAL INJURY PRODUCT. LIABILITY

**PERSONAL PROPERTY**
[ ] 370 OTHER FRAUD
[ ] 371 TRUTH IN LENDING
[ ] 380 OTHER PERSONAL PROPERTY DAMAGE
[ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY

**FORFEITURE/PENALTY**
[ ] 610 AGRICULTURE
[ ] 620 FOOD & DRUG
[ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
[ ] 630 LIQUOR LAWS
[ ] 640 RR & TRUCK
[ ] 650 AIRLINE REGS
[ ] 660 OCCUPATIONAL SAFETY/HEALTH
[ ] 690 OTHER

**LABOR**
[ ] 710 FAIR LABOR STANDARDS ACT
[ ] 720 LABOR/MGMT RELATIONS
[ ] 730 LABOR/MGMT REPORTING & DISCLOSURE ACT
[ ] 740 RAILWAY LABOR ACT
[ ] 790 OTHER LABOR LITIGATION
[ ] 791 EMPL RET INC SECURITY ACT

**BANKRUPTCY**
[ ] 422 APPEAL 28 USC 158
[ ] 423 WITHDRAWAL 28 USC 157

**PROPERTY RIGHTS**
[ ] 820 COPYRIGHTS
[ ] 830 PATENT
[ ] 840 TRADEMARK

**SOCIAL SECURITY**
[ ] 861 MIA (1395FF)
[ ] 862 BLACK LUNG (923)
[ ] 863 DIWC (405(g))
[ ] 863 DIWW (405(g))
[ ] 864 SSID TITLE XVI
[ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
[ ] 870 TAXES
[ ] 871 IRS-THIRD PARTY 20 USC 7609

**OTHER STATUTES**
[ ] 400 STATE REAPPORTIONMENT
[ ] 410 ANTITRUST
[ ] 430 BANKS & BANKING
[ ] 450 COMMERCE/ICC RATES/ETC
[ ] 460 DEPORTATION
[ ] 470 RACKETEER INFLUENCED & CORRUPT ORGANIZATION ACT (RICO)
[ ] 480 CONSUMER CREDIT
[ ] 490 CABLE/SATELLITE TV
[ ] 810 SELECTIVE SERVICE
[ ] 850 SECURITIES/COMMODITIES/EXCHANGE
[ ] 875 CUSTOMER CHALLENGE 12 USC 3410
[ ] 891 AGRICULTURE ACTS
[ ] 892 ECONOMIC STABILIZATION ACT
[ ] 893 ENVIRONMENTAL MATTERS
[ ] 894 ENERGY ALLOCATION ACT
[ ] 895 FREEDOM OF INFORMATION ACT
[ ] 900 APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE
[ ] 950 CONSTITUTIONALITY OF STATE STATUTES
[ ] 890 OTHER STATUTORY ACTIONS

**REAL PROPERTY**
[ ] 210 LAND CONDEMNATION
[ ] 220 FORECLOSURE
[ ] 230 RENT LEASE & EJECTMENT
[ ] 240 TORTS TO LAND
[ ] 246 TORT PRODUCT LIABILITY
[ ] 290 ALL OTHER REAL PROPERTY

**ACTIONS UNDER STATUTES**

**CIVIL RIGHTS**
[ ] 441 VOTING
[x] 442 EMPLOYMENT
[ ] 443 HOUSING ACCOMMODATIONS
[ ] 444 WELFARE
[ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT
[ ] 446 AMERICANS WITH DISABILITIES - OTHER
[ ] 440 OTHER CIVIL RIGHTS

**PRISONER PETITIONS**
[ ] 510 MOTIONS TO VACATE SENTENCE 28 USC 2255
[ ] 530 HABEAS CORPUS
[ ] 535 DEATH PENALTY
[ ] 540 MANDAMUS & OTHER
[ ] 550 CIVIL RIGHTS
[ ] 555 PRISON CONDITION

12/14/07

E 633651

Check if demanded in complaint:

CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.? IF SO, STATE:

DEMAND $ _____  OTHER _____   JUDGE _____  DOCKET NUMBER _____

Check YES only if demanded in complaint
JURY DEMAND: [x] YES  [ ] NO

NOTE: Please submit at the time of filing an explanation of why cases are deemed related.

(SEE REVERSE)

(PLACE AN x IN ONE BOX ONLY)                    **ORIGIN**

[X] 1 Original Proceeding  [ ] 2a. Removed from State Court  [ ] 3 Remanded from Appellate Court  [ ] 4 Reinstated or Reopened  [ ] 5 Transferred from (Specify District)  [ ] 6 Multidistrict Litigation  [ ] 7 Appeal to District Judge from Magistrate Judge Judgment

[ ] 2b. Removed from State Court AND at least one party is a pro se litigant

(PLACE AN x IN ONE BOX ONLY)           **BASIS OF JURISDICTION**                    **IF DIVERSITY, INDICATE CITIZENSHIP BELOW.**
[ ] 1 U.S. PLAINTIFF   [ ] 2 U.S. DEFENDANT   [X] 3 FEDERAL QUESTION (U.S. NOT A PARTY)   [ ] 4 DIVERSITY         **(28 USC 1332, 1441)**

**CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)**
(Place an [X] in one box for Plaintiff and one box for Defendant)

| | PTF | DEF | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ]1 | [ ]1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ]3 | [ ]3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ]5 | [ ]5 |
| CITIZEN OF ANOTHER STATE | [ ]2 | [ ]2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ]4 | [ ]4 | FOREIGN NATION | [ ]6 | [ ]6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

12 Old Mamaroneck Road, Apt. 4D
White Plains, New York 10605
Westchester County

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

1065 Avenue of the Americas, 16th Floor,
New York, New York 10018
New York County

DEFENDANT(S) ADDRESS UNKNOWN
REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

Check one:  THIS ACTION SHOULD BE ASSIGNED TO:   [ ] WHITE PLAINS    [X] FOLEY SQUARE
(DO NOT check either box if this a PRISONER PETITION.)

DATE           SIGNATURE OF ATTORNEY OF RECORD         ADMITTED TO PRACTICE IN THIS DISTRICT
12/14/2007                                             [ ] NO
RECEIPT #      Scott J. Ste____                        [X] YES (DATE ADMITTED Mo. _____ Yr. _____)
                                                       Attorney Bar Code # SS0484

Magistrate Judge is to be designated by the Clerk of the Court.
Magistrate Judge _____**JUDGE ELLIS**_____ is so Designated.

J Michael McMahon, Clerk of Court by _____ Deputy Clerk, DATED 12/14/07.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)