UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOUIS BARRY RUTLEDGE,<br><br>*Plaintiff*<br><br>-*against*-<br><br>TRANSITCENTER, INC. and LARRY FILLER,<br><br>*Defendants* | Index No. 07 CIV 11267 (JGK)<br>**ECF CASE**<br><br><br>**AMENDED COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Louis Barry Rutledge, by and through his attorney, Scott J. Steiner P.C., complains of defendants as follows:

## JURISDICTION AND VENUE

1.    This action seeks damages against defendants, with respect to plaintiff's former employment, for racial and skin color discrimination under Title VII of the Civil Rights act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"); the New York State Human Rights Law, Executive Law § 290, et seq.; and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, et seq.

2.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 2000e, et seq.

3.    All conditions precedent to suit under Title VII have occurred or been complied with, specifically: (a) a timely charge of employment discrimination was filed with the Equal Employment Opportunity Commission; (b) a Notice of Right to Sue, a copy of

which is attached hereto as Exhibit "A", was received on September 19, 2007, and (c) this Complaint has been filed within ninety (90) days of receipt of the Notice of Right to Sue.

4.      Pursuant to 28 U.S.C §1367, this Court has supplemental jurisdiction over state and local law claims arising from the same nucleus of operative facts and which are part of the same case or controversy as the federal claims.

5.      Venue is appropriate in this Court under 28 U.S.C. § 1391 (b) and (c), in that plaintiff was, at all relevant times, a resident of this judicial district, the defendants, at all relevant times, did business in this judicial district, and a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.

## PARTIES

6.      Plaintiff, Louis Barry Rutledge, is a black male of African-American descent who was born on August 23, 1959 and presently resides in, White Plains, New York 10605. Plaintiff was hired by TransitCenter, Inc. ("TransitCenter") on October 20, 2003 in the position of "Sales Supervisor."   Plaintiff served as Acting Vice President of Sales from October, 2005 until his departure from TransitCenter on about February 21, 2006.

7.      Defendant TransitCenter is an "employer" within the meaning of Title VII and other applicable anti-discrimination laws, and has a place of business at 1065 Avenue of the Americas, 16th Floor, New York, New York 10018.   TransitCenter is in the business of selling transportation benefit programs that allow employers to pay employees' commuting costs in pre-tax dollars.

8.      At all times relevant herein, defendant Larry Filler, a white male, was the President and CEO of TransitCenter, a member of its Board of Directors, and, upon information and belief, has substantial authority to make executive personnel decisions for

TransitCenter. He is liable as an aider and abettor under the New York State Human Rights Law and the New York City Human Rights Law.

**FACTS**

**PLAINTIFF'S EMPLOYMENT HISTORY**

9.      Plaintiff's employment by TransitCenter began on October 20, 2003 as Sales Supervisor.  Plaintiff reported to Diana Marran, the Vice President of Sales.

10.      Plaintiff worked as the "Outside" Sales Supervisor, meaning that he was responsible for supervising the "Outside" sales force which sells the more profitable automated products of TransitCenter.  The "Outside" sales force did not handle cold calls, but visited potential customers at their offices.

11.      As Sales Supervisor, plaintiff was given a very small sales territory and devoted a good deal of his time to management of the sales force.  Plaintiff regularly assisted with sales meetings, visited accounts with his sales representatives, and otherwise supervised his sales force.  Plaintiff also responded to Requests for Proposals and attended executive meetings.

12.      Within six months of plaintiff's commencement of employment with TransitCenter, plaintiff and Diana Marran agreed that plaintiff's sales responsibilities would be replaced with managerial duties until plaintiff's position was completely managerial and sales responsibilities were no longer part of his job description.

13.      On about October 17, 2004, Diana Marran left TransitCenter. Larry Filler and Rosa Dachille (Vice President of Human Resources) met with plaintiff and asked him to assume the duties of Vice President of Sales as "Acting" Vice President of Sales. Plaintiff did so, assuming all the duties and responsibilities of the Vice President of Sales. Plaintiff's

3

title and salary, however, remained that of Sales Supervisor and plaintiff was never invited to move into the Vice President of Sale's office.

14.    Despite exemplary performance and repeated requests, plaintiff was repeatedly denied the promotion to the position of Vice President of Sales and Marketing.

15.    On about January 23, 2006, TransitCenter hired Paula Murray, a white female less qualified than plaintiff, as the Vice President of Sales.

16.    On February 14, 2006, Paula Murray met with plaintiff to outline plaintiff's position and job responsibilities as "Sales Manager" under her.

17.    Murray provided Plaintiff with a new written job description would have required him to perform, almost exclusively, sales over a large territory, without any appreciable management function.

18.    Plaintiff's new job description not only constituted a demotion from his position as Acting Vice President of Sales and Marketing, it also constituted a substantial demotion from his former duties as Sales Supervisor under Diane Marran.

19.    In purported response to plaintiff's concerns, on or about February 17, 2006, TransitCenter changed the title of plaintiff's position from "Sales Manager" to "Director of Sales Development."  This change, however, was merely cosmetic as the job description was otherwise identical to that of Sales Manager provided to him by Paula Murray.

20.    On or about February 21, 2006, plaintiff informed TransitCenter that he would not be able to accept the demotion to Director of Sales Development.  In response, Paula Murray requested that plaintiff submit a letter of resignation by the end of the day. Plaintiff complied with this request.

## PLAINTIFF'S EMPLOYMENT PERFORMANCE

21.    At all relevant times, plaintiff's performance equaled or exceeded expectations.

22.    Plaintiff excelled as Acting Vice President of Sales. In his performance evaluation of April, 2005, a copy of which is annexed hereto as Exhibit B, plaintiff met or exceed expectations in every category.

23.    Plaintiff met or exceeded every sales goal set for him dramatically increased sales, especially of the automated "P1" and "P2" programs that did not rely on a paper voucher program and the growth of which was central to TransitCenter's business plan.

24.    On January 30, 2005, defendant Larry Filler reported to the TransitCenter Board of Directors that sales were on target to meet forecasts and that growth of the New York City Premium Transit Check and non-Transitcheck programs (for which plaintiff was responsible) exceeded forecasts.

## TRANSITCENTER'S DISCRIMINATORY CONDUCT

25.    In October, 2004, plaintiff asked TransitCenter to consider him for the permanent position of Vice President of Sales.  In light of his superior performance, plaintiff had every reason to be confident that he would receive the position.

26.    Larry Filler and Rosa Dachile agreed that TransitCenter would consider plaintiff for the position of Vice President of Sales, however, they told plaintiff that any such decision would be subject to a three-month evaluation period.  The evaluation period ended in January, 2005, but TransitCenter did not promote plaintiff to Vice President of Sales, nor did TransitCenter indicate that he would not get the position.  Seven (7) months after he had

assumed the role of Acting Vice-President of Sales, on or about May 16, 2005, plaintiff was informed that he was denied the promotion.

27.    Plaintiff continued to successfully carry out his duties as Acting Vice President of Sales for an additional eight (8) months, until January 23, 2006. During this time, plaintiff repeatedly requested that he be granted the permanent position of Vice President of Sales.

28.    On July 21, 2005 and January 6, 2006, TransitCenter reiterated that plaintiff would not be promoted to the position of Vice President of Sales and Marketing.  On January 6, 2006, defendant Larry Filler drafted a memorandum setting forth the alleged reasons why the plaintiff did not qualify for the position of Vice President of Sales (the "January 6 Memorandum").

29.    As is evidenced by the January 6 Memorandum, defendant Filler was intimately involved in the conduct and participated in the decisions giving rise to the discriminatory conduct alleged herein. The January 6 Memorandum is attached hereto as Exhibit "C".

30.    In its Position Statement submitted to the EEOC disputing the discriminatory conduct alleged herein, TransitCenter admitted that Larry Filler met with plaintiff on May 16, 2005 "in connection with the assessment of TransitCenter as to Mr. Rutledge's skills and whether he could perform the duties of the Vice President, Sales."  The Position Statement further admits that, at that meeting, plaintiff was advised that he would not receive the position of Vice President Sales.  TransitCenter also admits, in the Position Statement that "Mr. Filler and Rosa Dachille, on behalf of TransitCenter, were the ones who not only had a substantial role in hiring [plaintiff]…but they were involved in the determination that he did

not meet the needs of the Vice President, Sales Position". The Position Statement is attached hereto as Exhibit "D".

31.    Upon information and belief, three (3) white TransitCenter employees, Rosa Dachille, Barbara Klein, and Susan O'Sullivan, were promoted to the level of Vice President during plaintiff's employment at TransitCenter.

32.    None of these promoted employees had qualifications superior to those of plaintiff.

33.    Upon information and belief, no outside candidates were interviewed in connection with the promotion of either Rosa Dachille, Barbara Klein, or Susan O'Sullivan. Additionally, both Barbara Klein and Susan O'Sullivan had been employed by TransitCenter for less than one year at the time of their promotions.

34.    When Susan O'Sullivan's superior left TransitCenter, Ms. O'Sullivan was immediately promoted to the position of Vice President of Marketing.  Unlike plaintiff, Susan O'Sullivan was not required to undergo any evaluative period prior to her promotion. Furthermore, even before her official promotion, she was introduced at a meeting of executives as the "next" Vice President of Marketing by Larry Filler. Additionally, she was referred to as the Vice President of Marketing in TransitCenter literature.

35.    In contrast, plaintiff was denied the promotion despite his exemplary performance as Acting Vice President of Sales.  He continued to perform all of the functions of Vice President of Sales without the salary, recognition, or respect that the position affords.

36.    After Ms. O'Sullivan's promotion, plaintiff spoke to Rosa Dachille, head of Human Resources, and stated to her "I guess you have different strokes for different folks" and "TransitCenter does not do blacks right." Ms. Dachille did not respond to these

comments and instead simply stared at plaintiff. After about 20 seconds of unresponsiveness, plaintiff left the room.

37.    Despite plaintiff's Complaint to the head of Human Resources, TransitCenter failed to investigate plaintiff's allegations of racial discrimination.

38.    Upon information and belief, no other TransitCenter employee was asked to assume managerial duties and responsibilities but was denied the title and salary appropriate to the position.

39.    Plaintiff was, at all relevant times herein, the only African-American in upper management at TransitCenter.

40.    Upon information and belief, currently, there are no African-Americans in upper management at TransitCenter.

41.    TransitCenter's failure to promote plaintiff to Vice President of Sales and Marketing is contrary to TransitCenter's policy of promoting from within the company.

42.    On June 27, 2007, the Equal Employment Opportunity Commission determined that TransitCenter, Inc. engaged in employment discrimination against Plaintiff in violation of Title VII, with respect to disparate treatment based upon his race and color.

43.    The above actions by defendants constitute unlawful discrimination on the basis of race and color in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.; the New York State Human Rights Law, Executive Law § 290, et seq.; and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, et seq.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST TRANSITCENTER
## (RACE DISCRIMINATION – TITLE VII)

44.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 43, as if set forth herein at length.

45.    The acts of the defendants constituted unlawful discrimination on the basis of race and color, in violation of Title VII.

46.    As a direct and proximate result of TransitCenter's actions, plaintiff has suffered harm and is entitled to damages and relief under Title VII.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST TRANSITCENTER
## (RACE DISCRIMINATION – STATE HRL)

47.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 43, as if set forth herein at length.

48.    The acts of the defendants constituted unlawful discrimination on the basis of race and color, in violation of the New York State Human Rights Law ("State HRL").

49.    As a direct and proximate result of TransitCenter' actions, Plaintiff has suffered harm and is entitled to damages and relief under the State HRL.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST TRANSITCENTER
## (RACE DISCRIMINATION – CITY HRL)

50.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 43, as if set forth herein at length.

51.    The acts of the defendants constituted unlawful discrimination on the basis of race and color, in violation of the New York City Human Rights Law ("City HRL").

52.    As a direct and proximate result of TransitCenter's actions, Plaintiff has suffered harm and is entitled to damages and relief under the City HRL.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST LARRY FILLER
### (AIDING AND ABETTING – STATE HRL)

53.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 43, as if set forth herein at length.

54.     By the acts alleged herein, Larry Filler is Liable to plaintiff for aiding and abetting the illegal acts of TransitCenter under the NYSHRL.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST LARRY FILLER
### (AIDING AND ABETTING – CITY HRL)

55.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 43, as if set forth herein at length.

56.     By the acts alleged herein, Larry Filler is Liable to plaintiff for aiding and abetting the illegal acts of TransitCenter under the NYSHRL.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff respectfully prays that this Court:

1.     Assume jurisdiction of this action;

2.     Issue a permanent injunction enjoining defendants from further violations of the aforementioned laws;

3.     Issue a declaratory injunction that the acts of defendants complained of were in violation of the aforementioned laws;

4.     Order defendants to make Plaintiff whole for all earnings and other benefits he would have received but for defendants' violations of law, including but not limited to: wages (front pay and back pay), bonuses, pension, and other lost benefits, with prejudgment interest thereon;

5.    Order defendants to pay Plaintiff compensatory and punitive damages for injuries, including emotional distress, suffered as a result of defendants' violation of the aforementioned laws;

6.    Award Plaintiff the costs and disbursements of this action together with reasonable attorney's fees; and

7.    Award Plaintiff such further and additional relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

Dated:        April 7, 2008
              White Plains, New York

                              Respectfully submitted,

                              SCOTT STEINER, P.C.

                    By:

                              _____
                              Scott J. Steiner (SS-0484)
                              Attorney for Plaintiff
                              2 William Street, Suite 302
                              White Plains, NY 10005
                              (914) 328-4734

which is attached hereto as Exhibit "A", was received on September 19, 2007, and (c) this Complaint has been filed within ninety (90) days of receipt of the Notice of Right to Sue.

4.      Pursuant to 28 U.S.C §1367, this Court has supplemental jurisdiction over state and local law claims arising from the same nucleus of operative facts and which are part of the same case or controversy as the federal claims.

5.      Venue is appropriate in this Court under 28 U.S.C. § 1391 (b) and (c), in that plaintiff was, at all relevant times, a resident of this judicial district, the defendants, at all relevant times, did business in this judicial district, and a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.

## PARTIES

6.      Plaintiff, Louis Barry Rutledge, is a black male of African-American descent who was born on August 23, 1959 and presently resides in, White Plains, New York 10605. Plaintiff was hired by TransitCenter, Inc. ("TransitCenter") on October 20, 2003 in the position of "Sales Supervisor."   Plaintiff served as Acting Vice President of Sales from October, 2005 until his departure from TransitCenter on about February 21, 2006.

7.      Defendant TransitCenter is an "employer" within the meaning of Title VII and other applicable anti-discrimination laws, and has a place of business at 1065 Avenue of the Americas, 16th Floor, New York, New York 10018.   TransitCenter is in the business of selling transportation benefit programs that allow employers to pay employees' commuting costs in pre-tax dollars.

8.      At all times relevant herein, defendant Larry Filler, a white male, was the President and CEO of TransitCenter, a member of its Board of Directors, and, upon information and belief, has substantial authority to make executive personnel decisions for

2

TransitCenter. He is liable as an aider and abettor under the New York State Human Rights Law and the New York City Human Rights Law.

## FACTS

### PLAINTIFF'S EMPLOYMENT HISTORY

9.      Plaintiff's employment by TransitCenter began on October 20, 2003 as Sales Supervisor.  Plaintiff reported to Diana Marran, the Vice President of Sales.

10.      Plaintiff worked as the "Outside" Sales Supervisor, meaning that he was responsible for supervising the "Outside" sales force which sells the more profitable automated products of TransitCenter.  The "Outside" sales force did not handle cold calls, but visited potential customers at their offices.

11.      As Sales Supervisor, plaintiff was given a very small sales territory and devoted a good deal of his time to management of the sales force.  Plaintiff regularly assisted with sales meetings, visited accounts with his sales representatives, and otherwise supervised his sales force.  Plaintiff also responded to Requests for Proposals and attended executive meetings.

12.      Within six months of plaintiff's commencement of employment with TransitCenter, plaintiff and Diana Marran agreed that plaintiff's sales responsibilities would be replaced with managerial duties until plaintiff's position was completely managerial and sales responsibilities were no longer part of his job description.

13.      On about October 17, 2004, Diana Marran left TransitCenter. Larry Filler and Rosa Dachille (Vice President of Human Resources) met with plaintiff and asked him to assume the duties of Vice President of Sales as "Acting" Vice President of Sales. Plaintiff did so, assuming all the duties and responsibilities of the Vice President of Sales. Plaintiff's

title and salary, however, remained that of Sales Supervisor and plaintiff was never invited to move into the Vice President of Sale's office.

14.    Despite exemplary performance and repeated requests, plaintiff was repeatedly denied the promotion to the position of Vice President of Sales and Marketing.

15.    On about January 23, 2006, TransitCenter hired Paula Murray, a white female less qualified than plaintiff, as the Vice President of Sales.

16.    On  February 14, 2006, Paula Murray met with plaintiff to outline plaintiff's position and job responsibilities as "Sales Manager" under her.

17.    Murray provided Plaintiff with a new written job description would have required him to perform, almost exclusively, sales over a large territory, without any appreciable management function.

18.    Plaintiff's new job description not only constituted a demotion from his position as Acting Vice President of Sales and Marketing, it also constituted a substantial demotion from his former duties as Sales Supervisor under Diane Marran.

19.    In purported response to plaintiff's concerns, on or about February 17, 2006, TransitCenter changed the title of plaintiff's position from "Sales Manager" to "Director of Sales Development."  This change, however, was merely cosmetic as the job description was otherwise identical to that of Sales Manager provided to him by Paula Murray.

20.    On or about February 21, 2006, plaintiff informed TransitCenter that he would not be able to accept the demotion to Director of Sales Development.  In response, Paula Murray requested that plaintiff submit a letter of resignation by the end of the day. Plaintiff complied with this request.

4

## PLAINTIFF'S EMPLOYMENT PERFORMANCE

21.    At all relevant times, plaintiff's performance equaled or exceeded expectations.

22.    Plaintiff excelled as Acting Vice President of Sales. In his performance evaluation of April, 2005, a copy of which is annexed hereto as Exhibit B, plaintiff met or exceed expectations in every category.

23.    Plaintiff met or exceeded every sales goal set for him dramatically increased sales, especially of the automated "P1" and "P2" programs that did not rely on a paper voucher program and the growth of which was central to TransitCenter's business plan.

24.    On January 30, 2005, defendant Larry Filler reported to the TransitCenter Board of Directors that sales were on target to meet forecasts and that growth of the New York City Premium Transit Check and non-Transitcheck programs (for which plaintiff was responsible) exceeded forecasts.

## TRANSITCENTER'S DISCRIMINATORY CONDUCT

25.    In October, 2004, plaintiff asked TransitCenter to consider him for the permanent position of Vice President of Sales.  In light of his superior performance, plaintiff had every reason to be confident that he would receive the position.

26.    Larry Filler and Rosa Dachile agreed that TransitCenter would consider plaintiff for the position of Vice President of Sales, however, they told plaintiff that any such decision would be subject to a three-month evaluation period.  The evaluation period ended in January, 2005, but TransitCenter did not promote plaintiff to Vice President of Sales, nor did TransitCenter indicate that he would not get the position.  Seven (7) months after he had

assumed the role of Acting Vice-President of Sales, on or about May 16, 2005, plaintiff was informed that he was denied the promotion.

27.    Plaintiff continued to successfully carry out his duties as Acting Vice President of Sales for an additional eight (8) months, until January 23, 2006. During this time, plaintiff repeatedly requested that he be granted the permanent position of Vice President of Sales.

28.    On July 21, 2005 and January 6, 2006, TransitCenter reiterated that plaintiff would not be promoted to the position of Vice President of Sales and Marketing.  On January 6, 2006, defendant Larry Filler drafted a memorandum setting forth the alleged reasons why the plaintiff did not qualify for the position of Vice President of Sales (the "January 6 Memorandum").

29.    As is evidenced by the January 6 Memorandum, defendant Filler was intimately involved in the conduct and participated in the decisions giving rise to the discriminatory conduct alleged herein. The January 6 Memorandum is attached hereto as Exhibit "C".

30.    In its Position Statement submitted to the EEOC disputing the discriminatory conduct alleged herein, TransitCenter admitted that Larry Filler met with plaintiff on May 16, 2005 "in connection with the assessment of TransitCenter as to Mr. Rutledge's skills and whether he could perform the duties of the Vice President, Sales."  The Position Statement further admits that, at that meeting, plaintiff was advised that he would not receive the position of Vice President Sales.  TransitCenter also admits, in the Position Statement that "Mr. Filler and Rosa Dachille, on behalf of TransitCenter, were the ones who not only had a substantial role in hiring [plaintiff]…but they were involved in the determination that he did

6

not meet the needs of the Vice President, Sales Position". The Position Statement is attached hereto as Exhibit "D".

31.     Upon information and belief, three (3) white TransitCenter employees, Rosa Dachille, Barbara Klein, and Susan O'Sullivan, were promoted to the level of Vice President during plaintiff's employment at TransitCenter.

32.     None of these promoted employees had qualifications superior to those of plaintiff.

33.     Upon information and belief, no outside candidates were interviewed in connection with the promotion of either Rosa Dachille, Barbara Klein, or Susan O'Sullivan. Additionally, both Barbara Klein and Susan O'Sullivan had been employed by TransitCenter for less than one year at the time of their promotions.

34.     When Susan O'Sullivan's superior left TransitCenter, Ms. O'Sullivan was immediately promoted to the position of Vice President of Marketing.  Unlike plaintiff, Susan O'Sullivan was not required to undergo any evaluative period prior to her promotion. Furthermore, even before her official promotion, she was introduced at a meeting of executives as the "next" Vice President of Marketing by Larry Filler. Additionally, she was referred to as the Vice President of Marketing in TransitCenter literature.

35.     In contrast, plaintiff was denied the promotion despite his exemplary performance as Acting Vice President of Sales.  He continued to perform all of the functions of Vice President of Sales without the salary, recognition, or respect that the position affords.

36.     After Ms. O'Sullivan's promotion, plaintiff spoke to Rosa Dachille, head of Human Resources, and stated to her "I guess you have different strokes for different folks" and "TransitCenter does not do blacks right." Ms. Dachille did not respond to these

7

comments and instead simply stared at plaintiff. After about 20 seconds of unresponsiveness, plaintiff left the room.

37.    Despite plaintiff's Complaint to the head of Human Resources, TransitCenter failed to investigate plaintiff's allegations of racial discrimination.

38.    Upon information and belief, no other TransitCenter employee was asked to assume managerial duties and responsibilities but was denied the title and salary appropriate to the position.

39.    Plaintiff was, at all relevant times herein, the only African-American in upper management at TransitCenter.

40.    Upon information and belief, currently, there are no African-Americans in upper management at TransitCenter.

41.    TransitCenter's failure to promote plaintiff to Vice President of Sales and Marketing is contrary to TransitCenter's policy of promoting from within the company.

42.    On June 27, 2007, the Equal Employment Opportunity Commission determined that TransitCenter, Inc. engaged in employment discrimination against Plaintiff in violation of Title VII, with respect to disparate treatment based upon his race and color.

43.    The above actions by defendants constitute unlawful discrimination on the basis of race and color in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.; the New York State Human Rights Law, Executive Law § 290, et seq.; and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, et seq.

**AS AND FOR A FIRST CAUSE OF ACTION AGAINST TRANSITCENTER**
**(RACE DISCRIMINATION – TITLE VII)**

44.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 43, as if set forth herein at length.

45.    The acts of the defendants constituted unlawful discrimination on the basis of race and color, in violation of Title VII.

46.    As a direct and proximate result of TransitCenter's actions, plaintiff has suffered harm and is entitled to damages and relief under Title VII.

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST TRANSITCENTER**
**(RACE DISCRIMINATION – STATE HRL)**

47.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 43, as if set forth herein at length.

48.    The acts of the defendants constituted unlawful discrimination on the basis of race and color, in violation of the New York State Human Rights Law ("State HRL").

49.    As a direct and proximate result of TransitCenter' actions, Plaintiff has suffered harm and is entitled to damages and relief under the State HRL.

**AS AND FOR A THIRD CAUSE OF ACTION AGAINST TRANSITCENTER**
**(RACE DISCRIMINATION – CITY HRL)**

50.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 43, as if set forth herein at length.

51.    The acts of the defendants constituted unlawful discrimination on the basis of race and color, in violation of the New York City Human Rights Law ("City HRL").

52.    As a direct and proximate result of TransitCenter's actions, Plaintiff has suffered harm and is entitled to damages and relief under the City HRL.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST  LARRY FILLER
### (AIDING AND ABETTING – STATE HRL)

53.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 43, as if set forth herein at length.

54.     By the acts alleged herein, Larry Filler is Liable to plaintiff for aiding and abetting the illegal acts of TransitCenter under the NYSHRL.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST LARRY FILLER
### (AIDING AND ABETTING – CITY HRL)

55.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 43, as if set forth herein at length.

56.     By the acts alleged herein, Larry Filler is Liable to plaintiff for aiding and abetting the illegal acts of TransitCenter under the NYSHRL.

### RELIEF REQUESTED

**WHEREFORE**, Plaintiff respectfully prays that this Court:

1.     Assume jurisdiction of this action;

2.     Issue a permanent injunction enjoining defendants from further violations of the aforementioned laws;

3.     Issue a declaratory injunction that the acts of defendants complained of were in violation of the aforementioned laws;

4.     Order defendants to make Plaintiff whole for all earnings and other benefits he would have received but for defendants' violations of law, including but not limited to: wages (front pay and back pay), bonuses,  pension, and other lost benefits, with prejudgment interest thereon;

5.    Order defendants to pay Plaintiff compensatory and punitive damages for injuries, including emotional distress, suffered as a result of defendants' violation of the aforementioned laws;

6.    Award Plaintiff the costs and disbursements of this action together with reasonable attorney's fees; and

7.    Award Plaintiff such further and additional relief as the Court may deem just and proper.


**JURY DEMAND**

Plaintiff demands a trial by jury on all issues.


Dated:        April 7, 2008
              White Plains, New York


                              Respectfully submitted,

                              SCOTT STEINER, P.C.


                    By:

                              _____
                              Scott J. Steiner (SS-0484)
                              Attorney for Plaintiff
                              2 William Street, Suite 302
                              White Plains, NY 10005
                              (914) 328-4734


11